Good morning. May it please the court. My name is Jack Reiter. I'm here on behalf of Kinsale Insurance Company. May I proceed, Your Honors? You may. Thank you, Your Honors. As a threshold matter, our position today is that Kinsale is entitled to judgment as a matter of law when the court examines and applies what we believe to be a clear and unambiguous pollution exclusion that was set forth in an endorsement that explicitly states that it replaces and supersedes the prior earlier policy language. That endorsement provided that it precludes coverage for any loss, damage, expense, or increase in loss, damage, cost, or expense which arises from any kind of seepage or any kind of pollution and or contamination or threat thereof. And the pollution exclusion further defines seepage of pollution and or contamination to include but not be limited to the seepage of or pollution and or contamination by anything including but not limited to any materials designated as a hazardous substance by the United States Environmental Protection Agency. Now, it is not disputed here, Your Honors, that the acetone and methanol, the chemicals that release vapors, the vapors that seeped out and would ultimately ignite the flame that was on a table, that those were in fact hazardous substances and therefore fall clearly within the definition of pollutants as used within the exclusionary language. Mr. Reiter, can I suggest, I think you're clearly right on the noun. I think this is clearly a pollutant. I don't understand how you can construe this contract for this not to be a pollutant. What I'm not sure you're right about is the verb. And you kind of are skipping over the verbs, but the verbs also strike me as important. Yes, Your Honor. What's the third one? Well, I think the main verb is seeping, Your Honor, is what I think Your Honor is referring to. Yeah, I guess what I would say to you is when I hear the word seep, that does not to me convey what you're arguing here. When I hear the word seep, I'm thinking of a barrel that has a liquid in it. And the liquid is sort of leaking out of, I guess I'm thinking of seep as somewhat similar to leak. I just don't think as a matter of plain English usage, what you're suggesting here falls within at least the unambiguous meaning of the word seep. And would you like to help me with that? Absolutely, Your Honor. And I think we can look together at the term any kind of seepage as utilized in the policy language. And I'll just point out parenthetically that this exact pollution exclusion has been found to be unambiguous by at least three or four different courts that we've identified in the brief. But here's what the language of the exclusion says on the question of seepage. The term any kind of seepage or any kind of pollution and or contamination as used in this endorsement includes but is not limited to seepage of or pollution and or contamination by anything including but not limited to. Excuse me, here. Let me see if I can find it. I want to find, for Your Honor, the exact language. I appreciate that. It's sort of circular because it says seepage is defined to include seepage. And then the other two verbs that were in the original definition, which I understand you probably didn't write this contract, doesn't strike me as a particularly useful definition to repeat the verbs being defined. Well, I guess, Your Honor, I completely understand the court's point. But the term seep or seepage, I think if one were to look at the ordinary language, and quite honestly, I don't recall that either the district court or even or the other side explicitly challenged the concept or the word seepage as being ambiguous. Now, I would I would agree that you all wrote this thing, right? Well, yes, Your Honor. And as I yes. And as I indicated, you all wrote it. That's right. But I want to get back to something more basic. How do we get jurisdiction here? Over this case, Your Honor, the district court certified it for immediate review under 54. Under Rule 54, neither side briefed the jurisdictional point. But you say we've got jurisdiction under 1292A1, I think, which governs injunctions. Is there any jurisdiction under that statute? Your Honor, I believe that the jurisdiction of this court lies entirely under 54B as a matter certified by the district court as one that would assist in expeditiously evaluating issues pertinent to the overall interlocutory appeal. Correct. You say it's a design order appeal. I think it is an interlocutory appeal. Your Honor, I believe that 54B is construed as a final judgment for purposes of this court's jurisdiction. But what's left on the table? What was left on the table? What's left to be adjudicated, Your Honor, are breaches of contract and bad faith claims brought by. What was the what's the value of the claim here? What's the amount of money they ordered you? He ordered you to pay the claim. What's the what's the number that applies to that claim? Well, Your Honor, I believe. Well, the amount of the policy, I believe the amount of the claim and the amount at issue still remains unresolved. And that is going to be heard. That's a jury question to be resolved. Correct. That's correct, Your Honor. But the issue of whether or not the policy. So the value, the amount of the claim is yet to be resolved by jury.  This is an interlocutory order. Yes, Your Honor. Yes. Can I ask you? My understanding is that this is the district court certified a final judgment under federal rule of sale procedure. Fifty four B. Is that correct? That is correct, Your Honor. And I guess my understanding has been that when the court does it, those claims that have been resolved are a final decision under 28 USC, 1291, not 1292. Isn't that right? That is also my understanding, Your Honor. And if we cited 1292 in our brief, which I don't believe we did, Your Honor, but if we did, that would have been a mistake and an error on our part. But I, I don't, I didn't think that we did, but if we did, I apologize. This is a 54 B certified final judgment because the district judge concluded that it would facilitate the disposition of this issue was a threshold issue that could expedite the conclusion of the entire matter. So I do believe the court does have jurisdiction and I don't believe that. The other side resisted that you made the motion and the judge granted the certification the next day without getting a response. And they came in and moved to vacated and said, it was not an appropriate for an appeal, which they've apparently abandoned on appeal for some reason. But we have an obligation to satisfy ourselves, even though neither party is briefed. We have an obligation to satisfy ourselves that we have jurisdiction. I'm sure he's not raising the question, but neither of you briefed it. Absolutely, Your Honor. And they, and they resisted it. They resisted it in the district court. Anyway. Yes, Your Honor. The basis of it is 54 B certification. I agree. Isn't an appropriate 54 B certification is what we have to decide. Yes, Your Honor. And first I will say that you are correct, that it was resisted by a motion for reconsideration that the district judge spent approximately, I think six weeks addressing or examining before he issued his ruling. And so he did take the time and gave the other side opportunity to address 54 B. And again, you are correct that the other side has not advanced any challenge to this court's appropriate authority to review a 54 B final judgment as certified by the district judge. And of course, if, if further briefing on this jurisdictional issue would be appropriate, we will of course provide it to the court to the extent it's requested. We will provide it. I of course want to get back to judge Hayden's question. If I'm, you know, about the issue of seepage because I don't want to if I may, Your Honor, Judge King. Go ahead. Unless you have something further to say on the, on the on jurisdiction, I just was what I asked about jurisdiction because we have to decide that first. And you all haven't. Understood your honor. And I, our position here is that this is a final judgment. The fact that you say there's jurisdiction and the district court has jurisdiction and the other side says there's jurisdiction doesn't give us jurisdiction. Yes, Your Honor. You are correct. And I would submit that once 54 B certification is provided by the district judge, that creates a final judgment under 12 91, which vests this corporate jurisdiction. And, and if we need to provide any sort of supplement, Your Honor, we have to decide whether it's an appropriate 54 B, which is, which is interlocutory. It's an interlocutory order. There are issues remaining to be decided, including how much the claims were. And this was an odd situation anyway, because you're the insurer. And they made a claim against you instead of denying the claim, you sued them. This is your insurer to see insurance. The insurance insurer suing the insured. Usually they can come up in the other direction. Your Honor. Sure. The insurance is usually suing for coverage. Your suit, you sued them to say there wasn't any coverage without denying the claim. You've never denied the claim. Your Honor lawsuits for declaratory relief in terms of a question, examining coverage. I would submit are not completely out of the ordinary and, and can in fact be quite common in some jurisdictions. So I think here when, when Kinsel filed their lawsuit, there were a few points that were raised and specifically our position is that the pollution exclusion does in fact bar coverage here. And the reason we believe it does, I want again, going back to the issue of seeping, Your Honor, I would submit that the ordinary definition, the ordinary dictionary definition or a plain language of seep to, to come to flow out slowly or to emit slowly or to, to be something to be emitted to seep here. Your Honor, I would submit is not ambiguous. And I would also respectfully suggest that when we look at the fact that here it is undisputed, that there were vapors that were flowing, seeping emanating from these canisters and that those vapors were highly flammable and were in fact ignited. It is our position that at least at a minimum, we believe that as a matter of law, that should be deemed the efficient proximate cause of the loss here. And at a minimum, it's a question of fact, and we've cited multiple cases from various jurisdictions, including of course, the Murray case that talk about the fact that the efficient proximate cause doctrine presents a question for the trier effect out here. I think it is critical that the undisputed expert testimony that was provided by Kinsell came from two different witnesses. One was George harms from the West Virginia state fire Marshall's office. And then Alison Brenneman, an arson investigator that counsel the other side doesn't even address Ms. Brenneman's affidavit in their brief. And Ms. Brenneman testified, and this is in the record at joint appendix, 2190 and 2191 that the tabletop fire. And we acknowledge that there was a tabletop fire. That was the first event that was a quote fire unquote, but according to Ms. Brenneman, the tabletop fire ignited the flammable vapors and quote, had the chemicals not been present and had only the plastic ignited, the fire would have been contained to its area of origin. Assuming the proper use of fire extinguishers unquote, that is undisputed expert testimony that I don't believe JVBC even addresses in their answer brief. And the bottom line is, is that at a minimum, at a minimum, the efficient proximate cause here, the qualitatively predominant cause of the loss is a question of fact that should have been relegated to a jury. Although we believe that based on counsel, can, can we move to that? So, so far you've been focusing on your swinging for the fences argument, which is that not only should the district court not have granted summary judgment against you, it should have granted summary judgment in favor of you. Can I ask you to take a minute and respond to make what you think is the best argument where at minimum, the court should remand for something other than summary judgment in favor of one of the parties? Absolutely. At a minimum, we are entitled to a trial on all of these issues. And here's why. At a minimum, at a minimum, Murray and other cases have consistently held that in overwhelming number of cases, what constitutes the efficient proximate cause of a loss is the question of fact for the jury. So at a minimum, it's not up to the district judge and perhaps not even up to this board. It's up to a trier fact to listen to the evidence, to hear the expert testify and to make a decision about what's the predominant cause of the loss. Not the first, not the last. When there's a concurrence or a conflagration of events that can, that arise in the chain or link in the chain, a question for the jury is to decide which one of these events constitutes the predominant cause of the loss. That's a question for the trier fact. And is your view, is your view also, is your view also that the estoppel issue would be at minimum a question for the trier effect? Absolutely. Your honor. Absolutely. And I'm happy to go through every nuance of that. If, if, if your honor would like me to turn away from the pollution issue, I see that I only have a few seconds left. If I may use some of my rebuttal time to address that question. Your honors, if I may, let's talk about the issues of the estoppel because here I believe that is overwhelmingly a question of fact, what we know about this case on that issue is that first of all, construing all inferences in favor of Kent sale insurance company, we have an initial application at J a two 67. That says that sprinklers were quote being installed on quote at a joint appendix, two 44, a supplemental application said that the fire suppression had been contracted to brewer sprinklers. Now it would later be admitted that nothing had been done. Not none of the sprinklers had been installed. The plans for the sprinklers had not even been submitted at that time for appendix six 36. Now, Kimberly, excuse me, Emily Meyer can sell underwriter testified at joint appendix 1524 that quote at the time of binding, my assumption was that sprinklers were installed. And she explained that at the time the application was presented on September 6, 2019, she believed that that the idea that the sprinklers were quote being installed on quote, She interpreted to mean that she testified that she presumed that they were in the process of being done and believed that by the time the insurance was, was issued later on several weeks later or a week later, or rather she believed that the that the sprinkler system would have been concluded. And the timing here, your honors, the timing gives rise to, I believe very significant questions of fact. And here's what I mean when I talk about timing, the JDBC had borrowed from the small business administration and under the facts of this record, they needed to close the loan by September 6th and that means they needed to have insurance coverage in place by September 6th. Now on August 31st, Brian Coakley, the chief executive officer of JDBC advised Mr. Wilkins the broker that the loan was closing on September 6th and quote JDBC needed to have insurance in place before that unquote, that's a joint appendix 1422 through 1424, which means that there was only three days to bind insurance because of the September 3rd, because there was a preceding holiday. So between September 3rd to September 6th, Mr. Wilkins had to procure insurance for JDBC in order that JDBC could acquire the loan from the small business administration. So what I would suggest to the court is that they submitted the application. They said sprinklers were being installed. And then we have further indicia that there was an understanding by Kinsale that at the time, both of the application being presented and at the time that the insurance policy was bound, that there were in fact protective safeguards in place. So for example, I would ask the court to look at our supplemental appendix, 94 and 95 SSA, 94 and 95. Why these documents are important. And this is all discussed in our, in our briefs is because these documents present contemporaneous at the time business records from Kinsale manifesting a belief that there were in fact sprinkler systems and theft protective measures in place at the time the insurance was bound. So for example, at SSA 94 on September 6th, 2019 the day the application was submitted, you will find that there's references there from Emily Meyer, who also testified in this case that quote, all safeguards are in place on quote at SSA 95. Emily Meyer wrote a note in the Kinsale. These are internal documents that say all security measures are fully operational. And she describes the safeguards and it says sprinkler is being installed. If we look again at the internal notes on October 23rd, 2019, there's a document, a notation from will farmer at Kinsale who writes P one slash P two in place. P one and P two were the protective safeguards for fire. And it says security system being installed currently with remaining P nine. That's the protective safeguard for the theft measures. So at a minimum on a stopper, which is a fact issue and examining all inferences in favor of Kinsale against whom the judge ruled on the summary judgment, I would respectfully submit that at a minimum, it is a question of fact for the jury as to whether or not a stopper applies when we have clear disputed issues as to whether or not Kinsale believed based on internal documents created at that time and testimony that there were in fact, protective safeguards in place at the time they issued the insurance policy, particularly when we have all this documentation that says that the sprinklers are being installed, that death measures have been already installed when in fact we would later learn that none of that had been done. None of it. So that's why I think your honor at a minimum, we have significant questions of fact, as I mentioned, I know I'm deep into my rebuttal time. So unless there are any questions about either the exclusion or the issues of fact, I would reserve on the remaining time. Thank you. Thank you. Mr. McMillan. Good afternoon, your honors. My name is Stuart McMillan and I represent JDBC in this appeal. This was a fire loss, pure and simple. The undisputed record shows that Kinsale has already conceded that in its As the underwriter, Kinsale knew exactly what it was insuring. It issued a quote, it accepted applications, issued a quote, bound a policy and conducted an inspection, took pictures, wrote a seven page inspection report of the facility, and then accepted an $80,000 premium. That's undisputed. To fully understand this case, we have to put context to it. And that's one of the things that is glaringly missing from the appellate. This JDBC was to be one of the largest manufacturers of hemp derived products. It uses a process, a closed loop process, whereby solvents are used for the extraction process. Kinsale is a insurance company that specializes in offering coverage for this very industry. They understand the process. They understand the solvents that are used in this process. And Kinsale, in fact, has its own specialized and proprietary underwriting guidelines specific to this industry. In the summer of 2019, my client started a build out of preparing its facility to extract hemp. As part of that, it needed insurance. Correct. Kinsale needed business. Undisputed. In this, we filled out an application like all of us do at some level with respect to trying to secure insurance. In that application, and one of these is a Kinsale application and a basically standard Accord application. My client discloses that the fire suppression system is being installed. It also talks and discusses the manufacturing process, identifies the very solvents that are going to be used in this process as it is used throughout the industry. That application was provided to Kinsale. They had both applications. Kinsale then issues a quote. In that quote, there is a block whereby you can indicate your contingencies. In the quote provided by Kinsale, there's no contingency. Oh my gosh, you don't have your fire suppression system completed. Therefore, we're not going forward. That's fair. Underwriters do that all the time. They control the process at that time. But in this instance, there was no contingency except one of really relevance here, your honors. And that was to we're going to conduct an inspection. Kind of what happened in the colony case. This court dealt with a three, four years ago. The inspector goes to the facility and goes around the facility, takes pictures of the solvents, the barrels. It understands that the actual fire suppression system is being installed. It says it three separate times in its report. The same language that was in the application that was provided. Let me give you a hypo that illustrates why my instinct is that this estoppel issue is a jury question. So we're. I agree with you on the fall. I think we can agree on the following. This contract says you have to have a fire suppression system or they won't pay for fire damage. I think that is undisputed in terms. I think it is also undisputed and true that the day they bound coverage, there was no fire suppression suppression system and they knew it. But it's, and that they inspected later and there was no fire suppression system and they knew it. I think those things are all undisputed. But what I think is also undisputed is that your client repeatedly represented. It was going to install one at some point. And so let me give you this hypothetical. I want you to imagine this fire happened five years after the inspection and five years later, your client still had not installed a fire suppression system. Do you argue that they would be a stopped then that by binding coverage based on a promise you were going to do something soon that they had for all time contracted to pay for fire damages, even if your client in contrast to what it said, never installed a fire suppression system. Your honor. First of all, I think that these policies are renewed every year. So five years is a, is a tough hypothetical, but the answer to this is how I'd answer this question. When we wrote being installed, that is actually very true. And let me, let me say to your point, we had hired the sprinkler vendor months before the application. We had paid half of that contract over $40,000. We had your honor, a hydrant fire hydrant connected to and had municipal water run to the facility. We had pipes delivered. So I think in fairness to say that we, we kind of made a false promise. I don't think it's fair on the undisputed record, but if we went to your hypothetical and that we just weren't going to do anything at all with it, there would be more, I guess, favor of opinion that, Hey, maybe this ought to go to a jury, but we don't have that. Your honor, because I guess my question to me, to me, to me, this case comes down to what did the parties reasonably understand being installed to mean? And what is the scope of what a reason? Cause I agree. They bound coverage knowing that you hadn't installed it yet, but it wasn't based on a, we didn't and we're never, it was based on a we're going to do it soon, or we're in the process of doing it. And once we're into a stopper like that, we're into the realm of equity and we're off to the races about what reasonable people understand things to mean and what a reasonable amount of time to do something is. And that seems really, really fact to me. It does not seem like summary judgment to me, your honor being installed means one thing. And that is, it is not installed. There's, it is clearly, there is no, just, I guess, really disagreement that being installed does not mean installed. And I was indicating being installed is actually a very accurate portrayal, but, but your honor, the reason it doesn't go to a jury question is when you are inspector comes there and as an underwriter, they have three options, your honor, that they can do when they go do their inspection, which is 11 days before the fire. They use the same terms. We do being installed. Everybody knows that it was not completed. And in that they have three options, but Mr. McAleenan, I'm glad you pointed out that 11 day day. If you told me, if I come to your house and I say, you haven't done something you're supposed to do. And you say, I know, I know, I know. I'm so sorry, but it's being installed again. I'm not saying that I necessarily think they should get summary judgment, but if you told me something was being installed, I would expect that it would happen within the next 11 days. I don't think that I would understand being installed to mean 11 more days are going to pass and it's not happened yet. Let me answer it this way. Your honor. When we filled out the application, that was an early September. We utilize the term being installed. And as I indicated, the reason for that is we had a vendor that we had already paid and they'd already started. We had water and the hydrant already put to the facility. We had pipes that were there and brought in the idea. The point I was making is they knew when they did the, when they went and did the inspection in late October, that it had not been installed. And my point is your honor under their own guidelines. And as an, as an underwriter, they could simply do this. They had three options. Hey, you're not complying with what you put in your application. So therefore we're going to return your premium. Number two, we're going to, we're going to basically say, Hey, there's noncompliance give you an opportunity to quote, get it installed or fully completed. Or three, you make a deliberate decision to move forward and buy and, and uphold the coverage or provide the policy and provide the insurance. Your honor, that's why this is not a summary judgment case on a stop with this point. The case law is very clear. The actual control rests with the underwriter. It had the opportunity to say, we're not going to do this. It's eyes were on the field. It knew exactly what it was doing. So the idea that somehow, Hey, you know, you, you put some temp aside, some temporal aspect to it that has no real meaning when you're actually there and you see it and you have three options under your own guidelines. And they chose. Mr. McMillan, I agree with you that that would absolutely be true. If the fire happened on the day of the inspection, I absolutely agree with you that that would be true. If the fire happened in the day of the inspection, I'd probably agree with you. If it happened the day after the inspection, I guess it's just less obvious to me that he, again, you know, you say they have these options. I mean, I don't think your client can go back to what their options under the contract were, because the moment we talk about a stop. We're conceding that under the literal language of the contract, your client loses. And your client is the one making an appeal to equity for an equitable exception to what the contract otherwise would say that we do in this situation. And at that point, I think we're talking about what a reasonable person would understand and how a reasonable person would rely. And it's just not obvious to, you know, there's also the principle that equity helps those who help themselves. And I, I just think there's an argument to be made. I guess I'll say that equity does not protect a person who doesn't do something they're supposed to do promises. They're going to do it. Then promises again, they're going to do it. And 11 days later, they still haven't done it. And then they get to the benefit of equity. Again, I'm not really suggesting that I think we enter summary judgment against your client on a stopper. I just think to use the language I used with your friend on the other side, it is an awful big swing to me to say, this is so overwhelming in your favor that you get summary judgment on it. Yeah. Fair enough. But, but I, and I understand your point that the reason that it is not subject to summary judgment from our client perspective is understanding the seminal law in West Virginia about a stop when the context of an insurance company. And understanding the concept that an underwriter controls the risk. And if the underwriter knows about facts in this instance, that the fire suppression was not completed, it has an obligation to make that known to us. That one of the things missing in your scenario is that somehow they came back to us and said, Hey, you haven't done this. You're making these promises. That's not a fair assessment of the record. In fact, we submitted an application and there was silence. We did not even know we were working to obviously get things up and running. We wanted to go in a full manufacturing process, but your honor, the way the case law works in a stop. It's clear fundamental law in West Virginia that if the underwriter knows about these facts, but continues to go forward and issue a policy, then they are going to be bound by that to come back later and say, Oh, wait a minute. This wasn't installed. Therefore we were excluded. That's why a stop will could be made as a matter of law chair. Your honor. Also, what is your, what is your, what is your best case for that problem? Sorry, go ahead. Mr. I want to change gears. That's what I want to do. I don't know. Maybe I didn't need to finish, but I still don't understand the jurisdictional answer here. You all took position. There was no jurisdiction for this appeal with judge Bailey. And then you didn't raise it. When you come didn't even brief it when it came down here. I'm going to give you a very practical and candid response. And that is you wanted to get over with. We wanted to get this case moving as fast as we can. You have an obligation to tell us that there is jurisdiction or there's not. And you can say that there was jurisdiction for some reason or tried to, which you can't do. We haven't examined it ourselves. Your Honor, you're correct. It's subject matter. Jurisdiction cannot be is something that the court must discern. And no matter what the parties say, but I was giving you the practical response is, is I got a company that has got sued and hasn't been paid for over three years and is essentially going underwater and becoming extinct. So that was part of it. But the second issue is this. And all I can say is it's under rule 54 B. You have to understand the actual complaint itself that was brought by Ken Sale is a complaint for that. There is no coverage. That was the extent of the complaint. And to that end, the court ruled that there was coverage and that you should have paid the claim and should have paid it three years. You then you didn't resolve the claim. We don't know how much you're claiming. You don't know. You don't have determination of the damages. Well, we have you have a judge barely ruled. There's coverage. All right. How much are they going to pay you? If we, if we uphold him, you don't know. You haven't had a trial yet. Well, Your Honor, actually, we do know. Well, Your Honor. Resolution of the claim. Your Honor, with respect to the value of the claim, it's 7.5 million. Our position is very clear that in their complaint, they never disputed the damages of the case. I want to make that very clear. They don't agree that that's 7.5 million. Well, what they stipulate to after the fact. Do you all can agree that 7.5 million? And that's what we got to resolve here is where they want to pay 75 million. Judge Bailey didn't rule that they didn't enter a ruling that they were going to pay you 7.5 million. He just said there was coverage. But for what? The value of the claim. He said that would be resolved later. We'll hold that off till later. That's what that makes it an interlocutory appeal. It's not a final order. Anyway, look at it. I understand. Your Honor. One of the points I make with respect to Judge Bailey, he ruled that the claim should be covered. It was in actually in some of his orders on some discovery issues that it was always a policy limits claim. What the point being is that they've never raised in their complaint. Oh, by the way, there's no coverage. And what you're seeking is only worth X dollars. My point of it is that's how the court got to where he got. In other words, that the coverage and the limits should be paid. That has always been his position because they never written, even though they sued us and didn't actually deny the claim, they never put in their lawsuit. There was some issue as to the value that it was somehow less than the policy limits. Mr. McMillan, can we assume that if you had sued them for failure to pay the claim, is it fair to say that you would have sought way,  way more than $75,000 in damages? More than yes. As in way, way, way over the amount of controversy. If you had commenced a lawsuit against them, the amount of money you would have requested would have been vastly above the amount of controversy requirement. Yes, that is true. Your Honor, I'd like to, with all due respect to talk a little bit about a couple of things. First of all, dealing with the efficient proximate cause, the most efficient proximate cause. Your Honor, I think that analysis is getting a little distorted. It's set out in West Virginia's case law. It's also set out in Couch. What you're looking for in that case is the but for, and this again is undisputed in the record. This was a heat gun set on a table caused a fire. If that didn't happen, we would not have this loss. That's the but for. That's why in the Matthews case, the court was able to, and that's the Supreme Court out of West Virginia, was able to affirm a summary judgment. You can look at that and determine that the efficient proximate cause is undisputed, and that is in the record. In all due respect, the comment made by counsel by some sort of expert that somehow blew that theory out of the water is absolutely untrue. This expert that was identified in a declaration in a reply brief, which we would argue is not a part of the act should be waived in and of itself, but in that representation by that expert, she's not disagreeing with the fire marshal and how the fire started. What she is trying to hypothesize and speculate that it got out of control because of the vapors, and that caused this fire to be a lot worse. That's not the issue. It's germane to the analysis of efficient proximate cause, and I would ask this court to realize that this has been set forth in the Matthews case and can be done. Also, Your Honor, with all due respect, with this seepage, this is not a seepage case. Judge, you're square on. We know what seepage is. These barrels, many of which they took pictures of during their inspection, were sealed containers. This isn't something where it's leaking out and encroaching on groundwater and causing some sort of problem. This is nothing but seepage. And Your Honor, this is a first-party fire case, and the cases that have been cited here, I'm sorry. It's important to talk about the vapors accelerated the fire or made it difficult to put out, and therefore, it is the proximate cause of the extent of the damage. It may not be an issue about what ignited, but isn't there a factual question as to what accelerated the damages? And she said vapors. Your Honor, she just, the point of that is not really, that is not what efficient proximate cause is. It would make a pollution case and fire case. It's very difficult to discern. The efficient proximate cause analysis is used as a tool in a first-party fire case. No, it wouldn't. For example, if you were prohibited under the contract to have some pollutant on store, on premises, and a fire started, and it found that, yes, the fire is normal negligence and would ordinarily be covered, but it's evidence that when the fire spread, it went to the area, to the pollutes that weren't supposed to be there, and it caused problems and caused an explosion. You are saying that just because it's undisputed that it's a covered act that caused the ignition, then we don't have to worry about proximate cause as to the extent of the damage? Absolutely, Your Honor. I say this with this notion that when you look at the case law that defines efficient proximate cause, there may be occasions where there are other perils that could be excluded, but for peril, which set everything in motion, is unbroken, and that leads to other losses. West Virginia law, settled West Virginia law, provides that coverage should be afforded. Let me say this, Your Honor, with respect, and I'm going to be on my time, that's all right, but with respect to a first-party fire case, there are no cases that have been cited that exclude coverage like we have here. None of those do. In fact, some of the cases that are cited, they're talking about either pollution cleanup, which is not what we're talking about, or they're talking about third-party liability claims, which we're not talking about. In other words, we're not talking about the fire happens, Your Honor. It infects the integrity of one of the barrels. Later on, there's seepage of that barrel, and this liquid gets into the ground, and they migrate over to someone in Maryland, and the person is upset with their well water or something like that, and they bring a claim. They bring a pollution claim. There are specific rules that apply to pollution cases, but this is a first-party fire case, and that's how the efficient approximate cost works. In the Matthews case, Your Honor, that case, the actual damages that were caused in that case was the demolition team. They actually leveled the dwelling, but our Supreme Court said the efficient approximate cost was actually the imposter. That didn't cause any tangible damage, but the court said that was the cause that set it all in motion, and that's what is meant by the most efficient approximate cost, and that's how this court, and that's how the district court was able to discern and say, this is a fire case for which you had agreed to provide coverage for a fire, which is the number one peril of this manufacturer and of this industry, and you knew about these solvents, by the way, that they were going to use in this process, and you bound the policy and took the $80,000 premium. If you put this case in context, Your Honor, this court, you should affirm the district court. He did get it right, and find that there is coverage. That is, as a matter of law, there should be coverage, and that the pollution exclusion does not apply in this instance, and therefore we are entitled to move forward with the second part of the case. Thank you, Your Honor. Thank you so much. Counsel, you have some time reserved. Thank you, Your Honor. Let me first emphasize why the estoppel issue is indeed a question of fact. From Joint Appendix 1534, Emily Meyer is explaining her understanding, and she says, from my understanding of the application, sprinkler systems were being installed. They were close. It sounds like they were close to being done. When I quote something, I'm sending out a document saying these are the terms and conditions that you have to agree to. The quote I indicated that sprinklers were in place. The broker, agent, and insured have to review that and then bind to that coverage. And there is a lot of testimony, that's just one highlight, where Kinsell expressed their understanding that, as pointed out, the concept of being installed is not some indefinite outlier that could go on indefinitely. At the end of the day, it's a question of fact. And I think what we have to look back to is how, at the time of the fire, which wasn't until weeks and weeks later, Robert Copley admitted at Joint Appendix 564, we can agree that you did not have an operating sprinkler system prior to the fire. And that sprinkler system was in place using acetone and methanol for testing purposes. Answer, yes. And at page 636 of the Joint Appendix, and the drawings had not been approved by the state. Correct? Answer. Correct. So this isn't even a case where the sprinkler system was about to be done. And there was just one final pose that had to be connected. The plans for the sprinkler had not even been submitted for approval until after the fire. That absolutely creates a question of fact. So in terms of what the parties understood, it is a matter for a jury to evaluate. And I will go back just momentarily to this issue of seeping your honor, because I did look it up and seeping is to, to leak slowly. And here, I think it's very clear that the vapors did in fact leak slowly out of these canisters. And judge Gregory, as you discussed with my opposing counsel, it's, there is evidence in this record to demonstrate that it was the vapors that ignited. And that is what perpetuated the fire that resulted in the loss. And so ultimately, if we look at Murray, the question of what is the efficient proximate cause, what is the predominating cause of the loss? It ultimately goes back to a question for the jury to evaluate. Now I counsel said some disparaging. I don't want to said some things that weren't about Alison Brenneman and criticized our expert, but I don't believe that there's any reference in the answer brief, challenging Ms. Brenneman's declaration and Ms. Brenneman's declaration in the record. A bird that, but for the vapors, this fire would have been contained to the table where it started. So if this is a matter of what is a predominant cost, is it the small fire that could have been contained on the table or was it the vapors that caused the fire to extend throughout this facility and could not be extinguished at a minimum I would respectfully submit is a question for the jury. We did cite multiple cases, multiple where pollution exclusions have been applied in similar circumstances. We cited Hill and partners versus national union out of the eighth circuit where a flammable and explosive hydrocarbon condensate overflowed causing an explosion. And because that is a flammable volatile and explosive chemical, the pollution exclusion applied to preclude coverage. Similarly in noble energy versus by two minutes casualty company, the fifth circuit applied a pollution exclusion to preclude coverage when combustible vapors in a diesel engine exploded and said, quote, it indisputably met the policy's definition of pollutant and the explosion indisputably indisputably arose out of the discharge dispersal release or escape of such vapors unquote. So we have authority that explicitly addresses this very issue. Your honors. I appreciate the extra time that the court has provided. And finally, judge King, I don't want to leave your question. I answered, I would ask the court go back. If it may review the district judges detailed explanation as to why he for B certification was appropriate. He explained it in very clear detail. And I would ask that the court maintains jurisdiction over this case and reverse and remand for a trial on the merits of these issues. Thank you again for your time. Thank you counsel. Thank you both for your arguments. We can't come down and greet you as we would like to, but know very much that we appreciate you being here and helping us with these, with the case and wish you well and be safe. Thank you so much. Thank you, your honor. Thank you. I asked the deputy clerk to, uh, to adjourn the court for the morning session. The marble court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Roger L. Gregory, Robert B. King, Toby J. Heytens